**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**- SAN ANTONIO DIVISION**

| | |
|---|---|
| **IN RE:** § | |
| § | |
| § | |
| **ETHICUS HOSPITAL DFW, LLC D/B/A** § | **Civil Action No. _____** |
| **LEGENT ORTHOPEDIC HOSPITAL –** § | |
| **CARROLLTON** § | |
| § | |
| § | |
| § | |
| § | |

---

**MOTION FOR PROTECTIVE ORDER OF MOVANT ETHICUS HOSPITAL DFW,**
**LLC D/B/A LEGENT ORTHOPEDIC HOSPITAL – CARROLLTON AND MOTION TO**
**QUASH**

---

TO THE HONORABLE JUDGE OF SAID COURT:

Ethicus Hospital DFW, LLC d/b/a Legent Orthopedic Hospital – Carrollton ("Legent"), on

its own behalf, appearing herein as Movant, files this its Motion for Protective Order and Motion

to Quash.

**I.**
**PROCEDURAL BACKGROUND AND SUMMARY OF REQUESTED RELIEF**

1.      This is a miscellaneous action filed in this Court as the place of compliance

regarding a nonparty discovery subpoena issued to Movant, Ethicus Hospital DFW, LLC d/b/a

Legent Orthopedic Hospital – Carrollton, on its own behalf ("Legent").  *See* FED. R. CIV. P.

45(d)(3)(A)(ii)–(iii).

2.      Plaintiff, Robert Carl Ward, and Defendants Adil Ahmed Nesibo, Werner

Enterprises, Inc., Doe Individuals and Roe Entities are involved in litigation pending in the United

States District Court for the Southern District of Utah (Civil Action No. 4:22-CV-00054-DN). The

underlying litigation seeks recovery for personal injuries sustained by the Plaintiff.  Legent is a

surgical hospital doing business in Carrollton, Texas.  The Custodian of Records is located in San Antonio, Bexar County, Texas. Thus, the place of compliance is over 100 miles from the place in which the Custodian of Records for Legent is employed.  *See* FED. R. CIV. P. 45(d)(3)(A)(ii).

3.      For injuries sustained in the accident, Plaintiff Robert Carl Ward underwent treatment at Legent in Carrollton for several days between May 2021 through August 2021. Through discovery in the underlying case, the parties have or will receive Mr. Ward's medical records and billing records from Legent.  However, the Subpoena for the Production of Documents and deposition by written questions and subpoena *duces tecum* seeks information related to Legent's business practices and billing procedures.  This information is confidential in nature and subject to trade secret privileges.  *See* FED. R. CIV. P. 45(d)(3)(A)(iii).

## II.
## EVIDENCE IN SUPPORT OF MOTION

4.      Legent submits the following evidence in support of its Motion for Protective Order and Motion to Quash:

- Defendants' Amended Notice Intention for Production of Documents and Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises directed to Legent served October 25, 2023 (Exhibit "A");

- Defendants' deposition by written questions and subpoena *duces tecum* directed to Legent served on October 25, 2023 (Exhibit "B");

- Legent's Objections and Responses to Defendant's Intention for Production of Documents and Subpoena to Produce Documents (Exhibit "C"); and

- Affidavit of Kyleigh Allie (Exhibit "D").

### III.
### ARGUMENTS & AUTHORITIES

5.      As allowed by FED. R. CIV. P. 45(d), Legent moves for protection on the grounds enumerated in the following paragraphs:

      a.      Not a proper use of the rules of evidence or procedure to depose a witness on its business, financial, operational, and/or organizational information;

      b.      Defendants seek information and materials that are confidential, proprietary, and/or subject to the trade-secret privilege;

      c.      The requests seek trade-secret information, as well as confidential financial and proprietary information;

      d.      Under Rule 507, trade secret information is privileged;

      e.      Movant met its burden of proving the information and documents at issue are trade-secret;

      f.      Any Confidentiality Order enters must be narrow in scope so as to protect Movant's proprietary, confidential, and trade secret information;

      g.      Texas caselaw still supports narrow discovery;

      h.      Defendants have other avenues to challenge medical expenses; and

      i.      There is an undue burden placed upon Movant, a Nonparty.

6.      The document requests are vague and ambiguous. *See* (Exhibits "A" and "B"). The language of this request is subject to various interpretations or represents a misunderstanding of medical billing. In addition, the document requests are overbroad and not limited to a reasonable time, place, or scope with respect to the treatment of the patient at issue. FED. R. CIV. P. 26(b)(1). Specifically, the documents requested are those provided to "ALL PATIENTS" from 2015 to present. *See* (Exhibits "A" and "B"). Mr. Ward was treated at Legent on several days between May

2021 through August 2021. There are also questions seeking percentages of charges for various patients for different providers relating to all patients as well. *See* (Exhibits "A" and "B"). Therefore, even upon initial glance, the documents requested are not limited in time or scope.

7.      The requests and deposition questions are unduly burdensome, either individually or as a whole, and are not limited to nonprivileged matters that are relevant to a party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. FED. R. CIV. P. 26(b)(1); *see* (Exhibit "D"). The requests amount to nothing more than an impermissible fishing expedition. Additionally, FED. R. CIV. P. 45(d)(3) requires the court to quash a subpoena that subjects a nonparty to undue burden. *See Wiwa v. Royal Dutch Petroleum Co.,* 392 F.3d 812, 817–18 (5th Cir. 2004).

## A. Defendants Seek Information and Materials that are Confidential, Proprietary, and/or Subject to the Trade-Secret Privilege.

8.      Discovery is generally limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). Here, and as understood by Legent, Defendants seek documents information through written questions that also includes insurance rate information related to provider agreements with Legent, in addition to general billing information. *See* (Exhibits "A" and "B").

9.      In federal court, "the party resisting discovery must establish that the information sought is indeed a trade secret and that disclosure would be harmful." *Lackey v. Austin Dement, et al.,* SA-17-CV-00514-FB, 2019 WL 3238896, at *6 (W.D. Tex. July 18, 2019) (internal quotation marks omitted) (quoting *In re Cont'l Gen. Tire, Inc.,* 979 S.W.2d 609, 612 (Tex. 1998)).

The requesting party then bears the burden "to establish that the information is relevant and necessary" to his or her case. *Id.* (citing *Cont'l Gen. Tire*, 979 S.W.2d at 612–13). "If the trial court orders disclosure, it should enter an appropriate protective order." *Id.* (internal quotation marks omitted) (quoting *Cont'l Gen. Tire*, 979 S.W.2d at 612).

10.     Here, Defendants have not made a foundational showing that this information is both relevant and necessary to the presentation of its case.[1]

*i.     The documents and information sought are privileged trade secret materials.*

11.     Under FED. R. EVID. 501:

the common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise:

- the United States Constitution;
- a federal statute; or
- rules prescribed by the Supreme Court.

But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

12.     Additionally, "the Texas Uniform Trade Secrets Act ("TUTSA") requires that courts preserve the secrecy of an alleged trade secret by reasonable means." *See Lackey*, 2019 WL 3238896, at *5 (citing TEX. CIV. PRAC. & REM. CODE § 134A.006).  A trade secret is generally defined as a "formula, pattern, device[,] or compilation of information" that provides one with the opportunity to gain an advantage over competitors that do not know the information. *See Rimes v*

---

[1] *See* TEX. CIV. PRAC. & REM. CODE, Ch. 134A (Texas Uniform Trade Secrets Act); TEX. CIV. PRAC. & REM. CODE § 41.0105; *see also Guzman v. Jones*, 804 F.3d 707, 711–12 (5th Cir. 2015); *Rodriguez v. Bryan Truck Line, Inc.*, SA-17-CV-1103-XR, 2018 WL 7348032, at *3 (W.D. Tex. Sept. 18, 2018); *Lackey*, 2019 WL 3238896, at *6; *Perez v. Boecken*, SA-19-CV-00375-XR, 2019 WL 5080392, at *4–5 (W.D. Tex. Oct. 10, 2019), *aff'd*, 2020 WL 96907 (Jan. 8, 2020); *Continental General Tire, Inc.*, 979 S.W.2d at 610; *see also generally In re Hewlett Packard*, 212 S.W.3d 356, 364 (Tex. App.—Austin 2006, no pet.); *Glenn v. Leal*, 546 S.W.3d 807, 815 (Tex. App.—Houston [1st Dist.] 2018), *rev'd on other grounds*, 596 S.W.3d 769 (Tex. 2020); *Haygood v. De Escabedo*, 356 S.W.3d 390, 399 (Tex. 2011); *Hong v. Bennett*, 209 S.W.3d 795 (Tex. App.—Fort Worth 2006, no pet); *Big Bird Tree Servs. v. Gallegos*, 365 S.W.3d 173, 176 (Tex. App.—Dallas 2012, pet. denied); *Metro. Transit Auth. v. McChristian*, 449 S.W.3d 846, 854 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

*Club Corp. of Am.*, 542 S.W.2d 909, 913 (Tex. Civ. App.—Dallas 1976, writ ref'd n.r.e.).   To

constitute a trade secret, the information must not be "publicly available or readily ascertainable

by independent investigation." *Allan J. Richardson & Assocs., Inc. v. Andrews*, 718 S.W.2d 833,

837 (Tex. App.—Houston [14th Dist.] 1986, no writ); *see also SCM Corp. v. Triplett Co.*, 399

S.W.2d 583, 586 (Tex. Civ. App.—San Antonio 1966, no writ).   There must be "a substantial

element of secrecy" for the information to constitute a trade secret.   *Rimes*, 542 S.W.2d at 913;

*Furr's, Inc. v. United Specialty Advertising Co.*, 338 S.W.2d 762, 765 (Tex. Civ. App.—El Paso

1960, writ ref'd n.r.e.).

   13.   The owner of the information is required to have taken efforts to maintain and

protect the secrecy of the information.   *See Perez*, 2019 WL 5080392, at *5.   Texas courts have

easily found that customer lists, rate and cost structures, and codes for determining concessions

(such as rebates or discounts) qualify as trade secrets, which are not limited to formulas, processes,

machines used internally by a business, molds, blueprints and drawings, product designs, and

technical specifications.[2]  Similarly, development and research information generally is given

trade-secret protection when it is not disclosed outside the company. *See R & D Bus. Sys. v. Xerox

Corp.*, 152 F.R.D. 195, 197 (D. Colo. 1993); *In re Bass*, 113 S.W.3d at 742 (characterizing trade-

---

[2] *See In re Union Pacific R.R.*, 294 S.W.3d 589, 592–93 (Tex. 2009) (hazardous material rate structures); *IBP, Inc. v. Klumpe*, 101 S.W.3d 461, 466 (Tex. App.—Amarillo 2001, pet. denied) (employer-developed guides for meatpacking processes); *Bertotti v. C.E. Shepherd Co.*, 752 S.W.2d 648, 654 (Tex. App.—Houston [14th Dist.] 1988, no pet.) (pricing formulas); *In re Bridgestone/Firestone, Inc.*, 106 S.W.3d 730, 731-32 (Tex. 2003) (tire manufacturer's skim stock formula); *Computer Assocs. Int'l Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996) (specifically mentioning formulas); *Phillips v. Frey*, 20 F.3d 623, 628 (5th Cir. 1994) (manufacturing process) (applying Texas law); *FMC Corp. v. Varco Int'l, Inc.*, 677 F.2d 500, 503-04 (5th Cir. 1982) (heat treatment specifications and tooling requirements); *Sharma v. Vinmar Int'l, Ltd.*, 231 S.W.3d 405, 424 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (customer lists, pricing information, customer preferences, and marketing strategies); *American Derringer Corp v. Bond*, 924 S.W.2d 773, 787 (Tex. App.—Waco 1996, no writ) (design and manufacturing information related to derringers); *Stewart & Stevenson Servs., Inc. v. Serv-Tech, Inc.*, 879 S.W.2d 89, 95 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (concession codes); *Chandler v. Mastercraft Dental Corp.*, 739 S.W.2d 460, 467 (Tex. App.—Fort Worth 1987, writ denied) (molds and process for manufacturing orthodontics).

secret geologic data as "research").[3]

14.    Where a requesting party meets the burden "establish that the information is necessary for a fair adjudication of its claims," the trial court should "compel disclosure of the information, subject to an appropriate protective order." *Cont'l Gen. Tire*, 979 S.W.2d at 613.  In each circumstance, "the trial court must weigh the degree of the requesting party's need for the information with the potential harm of disclosure to the resisting party." *Id.*

15.    In U.S. Magistrate Judge Chestney's Order dated October 10, 2019, the court held that in order to meet its burden of establishing trade secret protection in connection with objection to discovery, a party must satisfy a six-factor test set out in Restatement of Torts §757 cmt. b (1939) and recognized in *In re Bass*, 113 S.W.3d 735, 739 (Tex. 2003):

> (1) the extent to which the information is known outside of his business;
>
> (2) the extent to which it is known by employees and others involved in his business;
>
> (3) the extent of the measures taken by him to guard the secrecy of the information;
>
> (4) the value of the information to him and his competitors;
>
> (5) the amount of effort or money expended by him in developing the information; and
>
> (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Perez*, 2019 WL 5080392, at *5; *see also Lackey*, 2019 WL 3238896 at *16 (considering the six factors stated above); *John Paul Mitchell Sys. v. Randalls Food Markets, Inc.*, 17 S.W.3d 721, 738 (Tex. App.—Austin 2000, pet. denied) (same).  Because the party resisting discovery in *Perez* satisfied the six-factor test, it established trade secret protection and the burden then shifted to the

---

[3] On the other hand, there is some information that would be confidential, but not trade secret. Examples include employee files and health care information. Such information, however, is entitled to protections from further disclosure when produced in litigation.

party seeking discovery to show that the information was necessary for a fair adjudication of its claims. *See Perez*, 2019 WL 5080392, at \*5–6. The requesting party must describe with particularity how the protected information is required to reach conclusions in the case. *See Cont'l Gen. Tire*, 979 S.W.2d at 611.

16.    **The requested information must be necessary**. *See Lackey*, 2019 WL 3238896 at \*15–19. Thus, once the burden is shifted to requesting party, a showing of relevance alone is no longer adequate. *See Cont'l Gen. Tire*, 979 S.W.2d at 613–14. A court should require disclosure of trade secrets "only where the information is 'material and necessary to the litigation and unavailable from any other source.'" *Id.* at 615 (emphasis added) (quoting *Automatic Drilling Machines, Inc. v. Miller*, 515 S.W.2d 256, 259 (Tex. 1974)). **This "test cannot be satisfied merely by general assertions of unfairness; instead, a party… must demonstrate *with specificity exactly how* the lack of the information will impair the presentation of the case on the merits to the point that an unjust result is a real, rather than a merely possible, threat.**" *In re Union Pac. R. Co.*, 294 S.W.3d 589, 592 (Tex. 2009) (emphasis added) (quoting *In re Bridgestone/Firestone, Inc.*, 106 S.W.3d 730, 732–33 (Tex. 2003)).

**B.  Movant Met its Burden of Proving the Information and Documents at Issue are Trade-Secrets**

17.    At issue in this motion are the following categories of Movant's information and documents: (1) insurance contracts, provider agreements, or information gleamed from those documents; (2) reimbursement or contractual rates; (3) contractual arrangements with vendors, providers, and carriers; (4) billing processes and procedures; and (5) internal business operations and financial data and information. Here, the Affidavit of Kyleigh Allie establishes such information and documents constitute trade secrets under the *In re Bass* analysis and holdings.

18.     ***Does the health care provider industry view the information at issue as trade*** ***secrets?***  Although Movant's chargemaster is available to the public on the hospital's website, the amount the hospital receives from any particular insurer is not publicly available.  *See* (Exhibit "D", para. 14).  When the *Bass* factors are applied in the instant case, this Court should recognize the information and documents at issue as constituting trade secrets.

       a.     ***Factor 1: The extent to which the information is known outside the business.***

19.     Ms. Allie's affidavit establishes that the following categories of information and documents are kept confidential and not known outside of Movant:

- negotiated insurer and provider agreements;
- negotiated rate schedules and payment schedules;
- information gleaned from insurer agreements, provider agreements, rate schedules and payment schedules;
- reimbursement or contractual rates;
- pricing formulas;
- billing processes, billing procedures, and internal business operations;
- contractual arrangements with vendors; and
- financial data, including collection rates.

*See* (Exhibit "D", para. 11).  This factor weighs heavily in Movant's favor.

       b.     ***Factor 2: The extent to which the information is known by employees and*** ***others involved in Movant's business.***

20.     Ms. Allie testified that the categories of information at issue are not even shared widely within the hospital.  *See* (Exhibit "D", paras. 11–12).  Rather, the confidential, proprietary information at issue is shared to only those in management on a need-to-know basis.  *See* (Exhibit "D", paras. 12).   This factor also weighs in Movant's favor.

### c.  *Factor 3: The extent of measures taken to guard the secrecy of the information.*

21.     Movant's billing and collection practices, the negotiated rates, the contractual arrangements with providers and vendors, and the pricing policies and processes are so valuable to Movant that it has implemented within its own internal management structure, rules and policies specifically designed to safeguard such information and limit its disclosure. *See* (Exhibit "D", para. 11). Again, access to the requested information and documents is limited internally to only those persons in management on a need-to-know basis. *See* (Exhibit "D", para. 12). Further, the confidential, proprietary, and private information at issue is stored at the central corporate office, where there is limited access to it. *See* (Exhibit "D", para. 11). As such, most employees do not have access to this information. *See* (Exhibit "D", paras. 10–11). Through these measures, Movant is able to control who has access to Movant's confidential, proprietary and private information. *See* (Exhibit "D", paras. 11–12).

22.     Finally, the negotiated agreements with insurers, providers, and vendors contain confidentiality provisions restricting disclosures of the agreements' provisions. *See* (Exhibit "D", para. 13). Such provisions also assure the terms of each contract remain confidential. This factor also weighs in Movant's favor.

### d.  *Factor 4: The information's value to Movant and its competitors.*

23.     Movant has also established this factor. Disclosure of the information at issue would cause Movant to suffer irreparable harm. Competitors and future business opportunities would know the pricing arrangements and collections rates between Movant and its current providers, vendors, insurers, and suppliers (including medical equipment), giving competitors an unfair advantage, that they would not normally have through legal means, thereby undermining Movant's ability to fairly negotiate pricing in the future. *See* (Exhibit "D", para. 12).

24.     Movant's billing processes and procedures are proprietary and confidential, because if a competitor were to learn them, that competitor could use the information to emulate Movant's successful business model.  Movant would suffer irreparable harm if Movant's billing processes, financial information, and business procedures, which were developed over time at significant cost, were disclosed to a competitor.  *See* (Exhibit "D", at paras. 12–14).  The insurance companies with which Movant has relationships could also use this information to their advantage and Movant's detriment when contracts are renegotiated.  *See* (Exhibit "D", para. 14).

25.     Movant would also be harmed because its separate individual contracts with insurers, providers, and vendors contain negotiated confidentiality provisions precluding each contracting party from disclosing various categories of information, including: financial information related to the agreement; all proprietary information related to the agreement; information required by law to be kept confidential including medical information; and any other identified information either contracting party declares is confidential and maintains as confidential.  *See* (Exhibit "D", para. 14).  Movant and each entity with whom it has the contracts are mutually bound to follow those provisions.  *See* (Exhibit "D", para. 13).  Ms. Allie has testified that Movant is not free to ignore or disregard its contractual obligations.  *See* (Exhibit "D", para. 13).

26.     Disclosure of its various confidential contracts with insurers would potentially jeopardize Movant's ability to conduct business with every health insurer whose confidential information is exposed by compliance with Respondents' discovery requests.  *See* (Exhibit "D", para. 14).  Health insurers comprise a significant part of every medical provider's economic livelihood, including that of Movant.  *See* (Exhibit "D", para. 14).  The agreements with each insurance provider go to the financial core of Movant's business.  *See* (Exhibit "D", para. 14).

27.     Thus, the fourth factor also weighs heavily in Movant's favor.

      e.      ***Factor 5: Amount of money expended by Movant in developing the information.***

28.     Each agreement Movant enters into with its providers, vendors, suppliers, or insurers is different.  Each agreement is negotiated separately, contingent on the facts specific to that business relationship.  *See* (Exhibit "D", para. 11).  Further, there are additional factors that can affect the rate of a patient, including the length of stay at the facility and the type and number of procedures the patient receives.  *See* (Exhibit "D", para. 10).  Moreover, the pricing formulas, rates, and reimbursements are all specifically structured to each facility in Texas.  *See* (Exhibit "D", para. 11).  The negotiation of each contract is a rigorous process that may take a few months up to an entire year.  *See* (Exhibit "D", para. 11).  The time and effort put into each contracting cycle with a particular provider, insurer, vendor, or supplier will depend on the length of the contractual relationship and changes within the particular industry to which the other contracting party belongs.  As a result, it is difficult to estimate a precise cost to Movant for each contract.  In any event, Movant need not establish each factor.  *See Bass*, 113 S.W.3d at 740.

      f.      ***Factor 6: Ease or difficulty with which the information could be properly acquired or duplicated by others.***

29.     The fact each contract is negotiated separately and kept confidential within Movant's facility makes it likely that a competitor would have to use improper means to obtain information about Movant's contractual arrangements with other insurers, providers, suppliers, and vendors. *See* (Exhibit "D", para. 11).  The same is true regarding Movant's business practices, financial data, billing procedures, and other proprietary information.  This factor also weighs heavily in Movant's favor.

30.     Movant's evidence, when analyzed under the *Bass* framework, establishes that the

---

information sought constitutes trade secrets. As a result, the information is privileged and not discoverable unless Defendant makes the showing required under *Bridgestone*, 106 S.W.3d at 732–33.

**E. A Confidentiality Order is Inadequate to protect Movant's proprietary, confidential, and trade secret information.**

31.     Finally, any offer of an agreed confidentiality order by Defendants to protect Movant's trade secrets is insufficient. Such an offer "does not dispense with the requesting party's burden to establish the necessity for the discovery of the trade secret information to fairly adjudicate a claim or defense." *In re Hewlett Packard*, 212 S.W.3d 356, 364 (Tex. App.—Austin 2006, no pet.). Therefore, Defendants must prove that the information provided is necessary to fairly adjudicate their defense in this suit. As such, Defendants would not be entitled to discover the requested information regardless of whether a confidentiality order was entered by the Court. *Id.*

32.     In *In re Muller*, Ms. Muller and her newborn sought medical care at the local hospital. 612 S.W.3d 701, 703 (Tex. App.—Amarillo Nov. 6, 2020, no pet.). After Ms. Muller made only partial payment on her medical bills, the hospital filed suit against her for the remaining amount owed on her medical bills. *See id.* (pleading in the alternative, the hospital, sought suit on account, breach of contract, and quantum meruit). Ms. Muller served the hospital with discovery requests, ten of her requests were at issue in the appeal, specifically:

- four requests related to the hospital's costs associated with the goods and services it provided;
- four more requests concerned the hospital's overall cost structure; and
- the final two requests involved payment information.

*Id* at 703–04. The hospital did not produce the requested information and objected on the bases of relevance, burden, overbreadth, and confidentiality. *Id* at 704. Ms. Muller responded by filing

a motion to compel, but the trial court denied Ms. Muller's motion. *Id.* Ms. Muller filed a petition for writ of mandamus. *Id.*

33.     The Seventh Court of Appeals held that the trial court did not abuse its discretion in denying Ms. Muller's motion to compel because the requested discovery was not proportional to the needs of the case or that the burden or expense of production outweighs its likely benefit. *Id.* at 705.  Specifically, because the hospital already "produced its annual Medicare cost reports, Medicare reimbursement rates for the goods and service Muller received, Medicaid reimbursement rates for the goods and services received, the amounts [the hospital] would have accepted as payment in full had Muller been covered by an insurer that contracted with [the hospital], and the discounts to which uninsured patients are entitled under the Affordable Care Act." *Id.* at 705. Additionally, the court found that the discovery sought was beyond the payment and reimbursement information discussed in *North Cypress*. *Id.* at 705–06 ("The [*North Cypress*] court did not conclude that the hospital's cost information, cost structure, or other categories of payment information were relevant and discoverable.").

34.     Here, unlike Ms. Muller, Movant is not a party to this lawsuit.  Movant has not voluntarily joined this lawsuit and is a non-party.  Therefore, Movant should not be ordered, even under a protective order, to produce trade secrets and confidential information about their business or business practices because the information requested is irrelevant to the personal injury case at hand. *See In re Bridgestone/Firestone*, 106 S.W.3d at 738–39 (O'Neill, J., concurring) (explaining trade secret information requested must be necessary and not merely useful).  Similar to the defendant in *Muller,* the Defendants here are seeking discovery that is not material or necessary to their case because they are seeking business records such as insurance contracts and internal financial documents, which goes beyond the payment and reimbursement information discussed

in *North Cypress*. *Id*; *see Cont'l Gen. Tire*, 979 S.W.2d at 615 (quoting *Automatic Drilling Machines*, 515 S.W.2d at 259). Defendants are attempting to obtain Movant's confidential insurance contracts with multiple providers as well as budgets, financial statements and tax information despite failing to prove that by not disclosing such documents fraud is being concealed or injustice is present. Movant has or will produce all relevant material and necessary documents to Defendants including the Plaintiff's medical billing records, anything thing more will severely harm Movant's business and may disproportionately advantage Movant's competitors.

35.     The rules of procedure and relevant case law have addressed the type of discovery sought by Defendants in the overly broad document Requests. In short, it is not allowed. The business information and records of Movant are considered to be highly confidential and proprietary information, not subject to disclosure. *See generally* (Exhibit "C"). Defendants have failed to articulate any reasonable basis for requesting this information. Movant therefore seeks protection from the Questions served by Defendants and moves to quash the deposition of the Custodian of Records on similar grounds. *In re Wharton*, 226 S.W.3d 452, 457–58 (Tex. App.— Waco 2005, no pet.); *In re Makris*, 217 S.W.3d 521, 524 (Tex. App.—San Antonio 2006, no pet.). Thus, to the extent Defendants want to assert some alleged bias, Movant seeks protection from Defendants' discovery and moves to quash the deposition on these grounds.

36.     For these reasons, Movant respectfully requests that the Court enter a protective order and quash the subpoena as an unnecessary waste of a non-party's time and resources.

**F.   Texas caselaw still supports narrow discovery.**

37.     Additionally, Defendants may argue that the Texas Supreme Court's 2018 decision, *North Cypress*, allows it the discovery sought here. *In re N. Cypress Med. Ctr. Operating Co., Ltd.*, 559 S.W.3d 128 (Tex. 2018) (orig. proceeding). It does not, however. In *North Cypress*, a

patient named Crystal Roberts was challenging a hospital lien filed by her medical provider for charges incurred following a motor vehicle accident. *Id.* at 130.   North Cypress in turn sued Ms. Roberts on sworn account.   *Id.*   In the litigation, Ms. Roberts—as the plaintiff/patient—asked in discovery for:

- The hospital's contracts from providers such as Aetna, First Care, United Healthcare, Blue Cross Blue Shield, Medicare, and Medicaid;

- The hospital's annual Medicare cost reports; and

- Medicare and Medicaid reimbursement rates for various services.

*Id.* The hospital objected to the discovery based on relevance and confidentiality. *Id.* The Texas Supreme Court held what North Cypress accepts as payment for its services is relevant and discoverable and accordingly found that the trial court did not abuse its discretion in ordering the requested discovery, subject to a protective order. *Id.* at 137.

38.    In addition, the plaintiff/patient was seeking insurance information from her *own* healthcare provider in response to the hospital lien. In other words, the patient was seeking to contest her provider's billing under the statutory scheme allowing the hospital to file a lien. *See* TEX. PROP. CODE Ch. 55. That is not the instant case. There is no billing dispute between the patient and the Hospital in this case. Furthermore, it is not an issue that these Defendants have a right to pursue as it has no standing to do so. *See DaimlerChrysler Corp. v. Inman,* 252 S.W.3d 299, 304–05 (Tex. 2005).

39.    Even assuming that the *North Cypress* decision is applicable to the facts present in this litigation—an assumption contested by Movant—the decision in no way allows for the broad, burdensome, and irrelevant discovery pursued by Defendants. *See generally, e.g.,* *Haygood v. De Escabedo,* 356 S.W.3d 390 (Tex. 2010); *Guzman v. Jones,* 804 F.3d 707 (5th Cir. 2015); *Glenn v.*

*Leal*, 546 S.W.3d 807 (Tex. App.—Houston [1st Dist.] 2018), *rev'd on other grounds*, 596 S.W.3d 769 (Tex. 2020); *Big Bird Tree Serv. v. Gallegos*, 365 S.W.3d 173 (Tex. App.—Dallas 2012, pet. denied); *Metro. Transit Auth. v. McChristian*, 449 S.W.3d 846 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The *North Cypress* decision does not make the materials requested by Defendants discoverable and clearly does not make the material admissible at trial.

40.     Furthermore, a recent Texas Supreme Court case extended *North Cypress* to personal injury lawsuits. *See generally In re K&L Auto Crushers, LLC*, 627 S.W.3d 239 (Tex. 2021). While *K&L Auto Crushers* did allow a party to obtain information and documents related to a non-party medical provider's billing practices, the defendants in that matter significantly narrowed their discovery requests to include only matters relevant to the underlying personal injury action. The court held: "Even when a party seeks information that is relevant and not privileged, courts should make an effort to impose reasonable discovery limits, particularly when the burden or expense of the proposed discovery outweighs its likely benefit." *K&L Auto Crushers*, 627 S.W.3d 239 (Tex. 2021) (internal citations omitted). Additionally, in that case, the defendants narrowed their requests unlike the requests in the instant matter.

41.     Specifically, the defendants in *K&L Auto Crushers* narrowed their discovery to four specific document requests:

- Documents reflecting agreements between [the providers] and insurance companies governing the amounts charged as of [the date of Walker's treatment] for the medical [services, materials, devices, and equipment] listed on the billing detail [for Walker's treatment];

- Documents reflecting amounts charged federal insurance programs and in network healthcare providers as of [the date of Walker's treatment] for the medical [services, materials, devices, and equipment] listed on the billing detail [for Walker's treatment];

- Documents reflecting agreements, communications, billings, and payments between [the provider] and the manufacturer, seller, or distributor of the

various devices/equipment listed on the billing detail for the charges for Plaintiff Walker; and

- Documents reflecting the Charge Description Master and how the Charge Description Master was determined as of [the date of Walker's treatment] for the medical devices/equipment listed on the billing detail [for Walker's treatment].

*Id.* at 247 n.4. As it can be seen from the four requests, the discovery was expressly related to the "billing detail" and "date of treatment" for the plaintiff's treatment with the medical provider, not financial and confidential information. The *K&L Auto Crushers* court furthered clarified this point by stating that "[a]lthough we conclude these types of information are relevant under *North Cypress*, we did not hold then, and we do not hold now, that all communications or all documents regarding those topics are automatically discoverable." *Id.* at 251.

42. Here, while some of the written questions and document requests attempt to narrow the scope to relevant treatment dates for Plaintiff, there are requests seeking entire agreements that are not limited to a reasonable time, place, or scope with respect to the surgery/radiology studies performed by Movant. *See* (Exhibits "A" and "B"). The scope of those requests must be narrowed to ensure that only relevant information from an agreement is sought.

### G.   Proportionality Must Control

43. *K&L Auto Crushers* also held that while insurance rate information was relevant, not all communications or all documents relating to those topics were automatically discoverable and "proportionality must control the extent to which a trial court orders such relevant information discoverable." *See id.* at 252. The Court should therefore consider the proportionality of Defendants' requests from Movant. The cost to Movant of producing the contracts and records sought—both the literal cost of Movant's employees gathering said documents and the risk of producing trade secret information—is not proportional to the amount billed in this case.

44.     Finally, Justice Huddle stated in her concurring opinion:

If one assumes that each of the tens of thousands of car-wreck cases filed in Texas each year involves a similar number of providers, and that the practice of issuing pricing subpoenas to nonparty providers in these cases will become widespread, **the potential systemic cost to health care providers becomes eye-popping. Whether this risk becomes reality depends entirely on court supervision.**

*See id.* at 263 (Huddle, concurring) (emphasis added).

45.     Additionally, on November 19, 2021, the Supreme Court of Texas issued an opinion further cementing the narrow reading of *K&L Auto Crushers*. *See generally In re ExxonMobil Corp.*, 635 S.W.3d 631 (Tex. 2021).   While the court allowed for discovery of insurance rate information to go forward, the defendants had to modify and narrow their previous requests to meet the standards of *K&L Auto Crushers*. *See id.* at 635.   Thus, the discovery sought by Defendants is distinguishable from the discovery sought in *K&L Auto Crushers* because the scope is not nearly as narrowly tailored.

26.     For these reasons, the *North Cypress* and *In re K&L Auto Crushers, LLC* decisions should be limited to their facts and should not be read as an invitation for Defendants to seek proprietary, burdensome, and irrelevant discovery from a nonparty medical provider.

**H.  There is an Undue Burden Placed Upon Movant, a Nonparty.**

27.     Movant also seeks the protection of the Court from the overbroad, burdensome, immaterial, and irrelevant discovery propounded by Defendants.   None of the deposition topics and discovery requests of Defendants are limited to a reasonable time, place, or scope with respect to the alleged incident concerning the underlying lawsuit.   Seeking documents from a non-party that are not reasonably limited and which concern unrelated to the subjects and patients is unreasonable, oppressive, harassing, and burdensome on its face.

28.     Additionally, as the discovery requested by Defendants includes numerous

contracts, agreements, correspondence, and communications, Movant asks the Court to protect it from undue burden and expense pursuant to FED. R. CIV. P. 45(d)(1) and Fed. R. Civ. P. 45(d)(3)(A)(iv).

29.    Specifically, Movant will incur significant fees and expenses to fully comply with the discovery including collecting, organizing, and reviewing all requested documents and information for multiple depositions and subpoenas totaling at least twenty-eight thousand eight hundred dollars (**$28,800.00**).  *See* (Exhibit "D", para. 24).  This amount also includes the significant amount of time it will take to perform analysis to acquire percentages and average amounts of charges for various patient payment types.  *See* (Exhibit "D", para. 22).  Movant has also incurred significant fees and expenses retaining legal counsel to assess, evaluate, and defend its interests.  *See* (Exhibit "D", para. 23).  Therefore, should Movant be required to produce the documents requested and/or appear for a corporate representative deposition, Movant requests that Defendants pay Movant for the reasonable fees and expenses incurred by Movant to produce all documents and information requested by Defendants in the subpoena.

30.    Movant is not a party to the underlying lawsuit.  It is a licensed hospital that provides operating suites for its affiliated surgeons to perform surgeries and provide medical care to its patients.  It should not be burdened with the fishing expedition that Defendants are trying to pursue.  The time, effort, and expense it would incur in gathering any responsive documents, analyzing them for production, reviewing them for confidential and private information, redacting them, and then producing them would be substantial.

### IV.
### MOTION TO QUASH

31.    The deposition notices direct the Custodian of Records to appear and produce the documents sought in attached Subpoenas *Duces Tecum*.  See (Exhibit "A" and "B").  However,

the notice sets the place of compliance in Utah while Legent (and the Custodian of Records) is located in Bexar County, Texas. The subpoena does not comply with FED. R. CIV. P. 45(c)(1)(a). In light of Movant's objections, there is no basis to compel any representative of the hospital to provide testimony under oath since none of the requested documents should be produced (or responsive documents have previously been produced) and the represented topics of questions are objectionable. Quashing the subpoena is proper not only to protect privileged and protected matter, but also because the subpoena requires the Custodian to comply beyond the geographical limits specified in Rule 45(c). See FED. R. CIV. P. 45(d)(3)(A)(ii). Alternatively, the deposition of Movant's Custodian of Records should be postponed until after a ruling on Movant's objections to the multiple Subpoena *Duces Tecum*.

32.     Movant is not a party to the underlying lawsuit. It has no direct connection to the underlying suit and the Custodian of Records is not a witness with any relevant knowledge of the underlying case. Therefore, Movant respectfully requests that the Court quash the deposition notices in their entirety and seeks an order from the Court prohibiting any deposition, either written or oral, of any employee or representative of Movant.

## V.
### CONCLUSION

33.     Defendants are entitled to reasonable discovery in the underlying case that is calculated to lead to the discovery of admissible evidence and that is not private, protected, or privileged. Rule 26.1(c) of the Federal Rules of Civil Procedure permits a trial court to order that discovery be sought in whole or in part or that it may only be undertaken by such methods or upon such terms and conditions directed by the Court.

34.     Again, the parties will receive medical records and billing records from Legent. Otherwise, responsive information, if any, is unavailable, private, confidential, irrelevant, or

available through other means. More importantly, Texas law does not allow for such harassing, burdensome, and oppressive discovery of a non-party healthcare provider. In truth, Defendants need nothing substantive from Legent to present their case to the trier of fact. Their discovery is improper, ineffective, and, in some instances, a violation of state and federal laws and regulations. Furthermore, Defendants have reasonable and available discovery tools at their disposal without the harassing discovery sought against Legent and its representatives. The discovery of Defendants should therefore be stricken.

**VI.**
**PRAYER**

WHEREFORE, PREMISES CONSIDERED, ETHICS HOSPITAL DFW, LLC D/B/A LEGENT ORTHOPEDIC HOSPITAL – CARROLLTON respectfully requests that this Court sustain its objections to the deposition and subpoena *duces tecum*. Legent further prays this Court enter an order protecting it from Defendants' written question deposition and subpoena *duces tecum* as set forth in this Motion. Legent prays for such other and further relief, both at law and in equity, to which it may be justly entitled.

Respectfully submitted,

ROYSTON, RAYZOR, VICKERY, & WILLIAMS, LLP
Fountainhead Tower
8200 IH-10 West, Suite 504
San Antonio, TX 78230
Scott.noel@roystonlaw.com

BY: _____
**SCOTT M. NOEL**
State Bar No. 00797158

**ATTORNEY FOR ETHICUS HOSPITAL DFW, LLC D/B/A LEGENT ORTHOPEDIC HOSPITAL - CARROLLTON**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing *Nonparty Ethicus Hospital DFW, LLC d/b/a Legent Orthopedic Hospital-Carrollton's Motion for Protective Order and Motion to Quash* has been sent by electronic service and electronic mail to the following counsel of record, on this the ____ day of November 2023:

James A. Trummell
Valiente Mott, Ltd.
700 South 7th Street
Las Vegas, NV 89101
702-623-2323

and

Timothy A. Mott
Valiente Mott, Ltd.
2975 W. Executive Parkway
Lehi, UT 84043
385-999-2999

***Attorney for Plaintiff***
Daniel M. Karp
Fee, Smith & Sharp, LLP.
13155 Noel Road, Ste. 1000
Dallas, TX 75240
972-934-9100; 972-934-9200
dkarp@feesmith.com

and

Peter H. Christensen, Esq.
John M. Zidow, Esq.
Alec C. Pizano, Esq.
Strong & Hanni
102 South 200 East, Ste. 800
Salt Lake City, UT 84111
801-532-7080; 801-596-1508
pchristensen@strongandhanni.com
jzidow@stronghanni.com

***Attorneys for Defendant***

**SCOTT M. NOËL**

---

## CERTIFICATE OF CONFERENCE

I certify that I made a good faith attempt to confer with all counsel issuing the discovery request and they were unresponsive to my request to confer.

Scott M. Noel